IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**BRADSHAW FAMILY TRUST, INC.**
**d/b/a HUNTON OFFICE SUPPLY, INC.**                                    **PLAINTIFF**

**V.**                                   **NO. 2:21CV00103 JM**

**TWIN CITY FIRE INSURANCE COMPANY**                          **DEFENDANT**

**ORDER**

Pending is the Defendant's motion for summary judgment, docket # 11.  Plaintiff has

filed a response and Defendant has replied.  For the reasons set forth herein, the motion is

GRANTED.

On January 15, 2021, Bradshaw Family Trust, Inc. d/b/a Hunton Office Supply, Inc. filed

suit seeking compensatory and punitive damages against Twin City[1] for: (1) breach of contract,

(2) bad faith, and (3) civil conspiracy.  Twin City has filed a motion for summary judgment on

each of these claims.  In response to the pending motion, Plaintiff concedes the dismissal of the

civil conspiracy, bad faith and punitive damages claims.  The only claim remaining is Plaintiff's

cause of action for breach of contract.

On June 12, 2018 Hunton Office Supply, Inc. ("Hunton") took out a business owner's

policy on its building at 202 North Washington Street, Forrest City, AR 72335 with The Hartford

through Twin City Fire Insurance Company ("Twin City").   This policy was renewed on June

12, 2019, for a building replacement cost of $1,378,000 and personal property replacement cost

of $386,700 for a period from 6/12/2019-6/12/2020.

---

[1] Plaintiff originally included Ott Insurance as a Defendant.  Those claims were dismissed on
July 29, 2021.

Terry Bradshaw is a beneficiary and trustee of the Bradshaw Family Trust, which operated Hunton Office Supply.  Bradshaw went through his friend, Cole Schanandore with Ott Insurance to obtain the insurance for the business.   Ott Insurance is an independent insurance agency that works with different insurance companies to provide multiple types of policies for its customers.  It is admitted that Bradshaw had the authority to bind Hunton.  Bradshaw understood that Schanandore would find the best coverage for the best price and Bradshaw did not care which insurer Schanandore used.  The policy in question lists Ott Insurance as the agent/broker.

In January 2020, Bradshaw texted Schanandore about dropping the insurance on the Hunton office building.  Plaintiff denies that this request was for an immediate drop in the coverage but instead was an inquiry about dropping coverage at a point in the future when the business was sold and the building vacated.  At Bradshaw's request, Schanandore began working to secure a quote from several insurance companies.  On February 21, 2020, Schanandore texted Bradshaw that he had obtained an underwriting quote of $1.3 million on the Hunton office building.  Bradshaw questioned the high amount of the valuation and expressed that he only wanted $250,000 of coverage on the building.  On April 1, 2020, Bradshaw texted Schanandore to "drop the coverage on the building to $250,000."  Plaintiff contends that he understood the coverage would be dropped on the renewal date.

On April 7, 2020, Patsy Bajorek, an employee from Ott Insurance, emailed Twin City to request that the building valuation be reduced to a limit of $250,000. She further explained that Hunton planned to scale back and close down soon and that the building was too large for the business.  Mary Jenkins—an underwriter for Twin City—asked for more information. Shanandore explained that Hunton did not plan to close down but to scale back. Because of this, he explained that if the building were destroyed, Hunton  "would only rebuild part of it."

2

Jenkins replied by stating that although she understood "that they wouldn't care to rebuild the entire building, [she had] to take into consideration the total usage of the building and the potential for a total fire loss in a state where [Twin City] would be held to the full value that we placed on the building, since AR is a valued policy state." She also asked for a percentage of the portion of the building that would be used going forward or if they planned to rent out a portion of the building.  Schanandore stated that Hunton did not intend to rent out the building. However, he reiterated: "If a major loss were to happen, they could make do with a smaller space. With the parents aging out of the business, the kids would not rebuild the entire 15,000 sq ft."

Jenkins then approved to quote the building at $450,000 ACV and directed that the quote to be sent to Bajorek and Schanandore.  The underwriter notes documented that a Twin City employee then sent the following quote letter to the agents on April 8, 2020:

> We have completed this quote using an effective date of 4/1/2020 which amended the building coverage limit to $450,000 ACV. The quote resulted in $532.00 of return premium (pro-rated). Be advised that this is a quote only and no coverage is bound. This would result in a total estimated annual policy premium of $5,066.00. We also quoted the change on the renewal effective 6/12/2020 and it results in a return premium of $3,089.00 and a total estimated annual policy premium of $5,508.00.

Shanandore texted Bradshaw a PDF of the quote letter and explained that Twin City would only agree to drop the coverage to $450,000.  Plaintiff admits receiving the text and attached PDF but claims the PDF quote would not open when he received it.  Shanandore then asked Bradshaw, "Do you want us to move forward with $450,000?"  Bradshaw responded, "Yes that will help and we could rebuild more than enough with that if something happened." Schanandore confirmed the endorsement by stating "Ok, we will get it changed."  After getting Bradshaw's permission to proceed, Schanandore told Twin City: "Please endorse the policy as

quoted."    The Policy then included an Endorsement with a change effective date of April 1,

2020 and a process date of April 8, 2020. The Endorsement stated: "building limit of insurance is

changed from $1,378,000 to $450,000."  The Endorsement also stated: "Any changes in your

premium will be reflected in your next billing statement. if you are enrolled in repetitive EFT

draws from your bank account, changes in premium will change future draw amounts."

On April 13, 2020 Plaintiff paid the previous premium of $936.89 by way of EFT.  On

April 22, 2020, Twin City issued a bill to Hunton which reflected the Endorsement, noting a

reduction of $532.00, leaving an account balance of $178.89.  On May 12, 2020, Hunton paid an

electronic payment of $178.89.

On the night of April 28-29, 2020 Hunton sustained wind damage from a severe storm.

On April 29, 2020, Hunton reported the damage.  After the storm, Twin City estimated the

replacement cost of the building to be $1,978,324.07 and actual cash value cost of the loss to be

$1,583,792.91.  Twin City paid $481,759.00 to and on behalf of Hunton by May 28, 2020.

Hunton disputed that the limits had been reduced from $1,300,000.00 to $450,000.00 and

requested policy reformation.  On June 17, 2020 Twin City issued the following statement:

> The reformation request was declined. In our review, your agency
> came to us in early April wanting to reduce, per your request, the
> building limits from $1,378,000 to $250,000. The agency indicated the
> business was winding down and that in the event of a loss, the insured
> would go back with a smaller building. It was eventually agreed that the
> building limit would be revised to a Functional Replacement Value of
> $450,000. We sent a quote letter to the agency which has an effective
> date of April 1, 2020 and indicates it will result in a returned premium of
> $532 for the current policy term. The quote also noted that at renewal
> (June 12, 2020) the premium reduction for the year would be $3,089.
> The agents response was to please endorse as quoted.
>
> On April 29, 2020, the insured had an extensive wind loss. When
> advised that the limits were $450,000, the insured responded that those
> limits were to be revised at renewal. Based on the documentation
> available, Hartford quoted the policy as requested by the agency. As

there is no error on Hartford's part, the reformation request has been
declined.

Plaintiff argues that at the time of the loss the insured believed there was $1,378,000 in
coverage for the structure.   Plaintiff claims:   1) There was no meeting of the minds on the
timing of the policy change endorsement; 2) There was no consideration for the policy change
endorsement; 3) As a renewal policy, according to the language of the policy, the Plaintiff had
paid for $1,378,000 in coverage for the structure at the time of the loss; 4) Twin City had the
ability to change the automatic withdrawal after the policy supposedly changed and failed to do
so, thereby extending coverage of $1,378,000 for another month (even if there had been a
meeting of the minds on the policy change date); 5) The policy change endorsement was never
delivered to the insured; 6) The question of the extent of Ott Insurance's authority is a fact
question for the jury; and 7) Even if the Court finds the Plaintiff agreed to the policy change
before the loss, the Plaintiff never agreed to allow Twin City hold on to its premiums for
additional months.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so
that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874
(8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial
courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is
> a need for trial -- whether, in other words, there are genuine factual
> issues that properly can be resolved only by a finder of fact
> because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact.  It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is discharged,
> and, if the record in fact bears out the claim that no genuine dispute
> exists on any material fact, it is then the respondent's burden to set
> forth affirmative evidence, specific facts, showing that there is a
> genuine dispute on that issue.  If the respondent fails to carry that
> burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th

Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.

Analysis

The modification of the terms of an insurance policy are governed by the rules applicable

to contracts. *Moss v. Allstate Ins. Co.,* 29 Ark. App. 33, 36, 776 S.W.2d 831, 833

(1989)(citations omitted).  The essential elements of a contract are: (a) competent parties; (b)

subject matter; (c) legal consideration; (d) mutual agreement; and (e) mutual obligations. *Id.* "A

contract may be modified, but it is essential that both parties agree to the modification and its

terms."  *Id*. Here, it is undisputed that Bradshaw initiated and agreed to the modification of the

policy in question.  Bradshaw began texting Schanandore in January 2020 requesting the

insurance on the office building be reduced.  At Bradshaw's request Schanandore began working

6

to secure quotes from several insurance companies.  In February Schanandore texted Bradshaw that he had obtained a quote of $1.3 million on the building.  Bradshaw responded that he only wanted $250,000 of coverage on the building and on April 1, 2020, Bradshaw texted Schanandore to "drop the coverage on the building to $250,000."    On April 7, 2020 Bajorek emailed Twin City requesting that the building valuation be reduced to a limit of $250,000. Twin City refused to limit the valuation to $250,000 but agreed to reduce the coverage to $450,000.  On April 8, 2020, Twin City sent a quote letter which stated in part, "We have completed this quote using an effective date of 4/1/2020 which amended the building coverage limit to $450,000 ACV. The quote resulted in $532.00 of return premium (pro-rated)." Shanandore texted a PDF of the quote letter to Bradshaw and explained that Twin City would only agree to drop the coverage to $450,000.  He then asked Bradshaw "Do you want us to move forward with the $450,000?"  Bradshaw responded, "Yes that will help and we could rebuild more than enough with that if something happened."  Shanandore confirmed stating "Ok, we will get it changed."  Shanandore then told Twin City to endorse the policy as quoted.  The Policy then included an Endorsement with a change effective date of April 1, 2020 and a process date of April 8, 2020. It stated: "This endorsement changes the policy effective" on the date indicated on the endorsement. Three weeks later, the building suffered wind damage from a severe storm.

Generally, endorsements are as much a part of the contract as other parts and must be given the same consideration in determining what coverage exists. *George v. Great Lakes Reinsurance (UK) PLC*, 2015 Ark. App. 36, 5, 454 S.W.3d 243, 245 (2015)(citations omitted). The endorsement initiated and agreed to by Bradshaw became effective on April 1, 2020.  It is undisputed that Bradshaw directed Shanandore to move forward with dropping the coverage in accordance with the quote letter, accordingly, Shanandore had actual authority to bind the

endorsement on behalf of Hunton.  Further, Arkansas law does not require an endorsement which reduces or modifies policy coverage to be accepted and signed by the named insured unless the modification was not issued at the request of the named insured. Ark. Code Ann. §23-79-307. It is undisputed Bradshaw requested the modification at issue.

Plaintiff argues that there was no meeting of the minds on the timing of the policy change.  However, it is undisputed that Bradshaw received the quote letter which clearly establishes an effective date of April 1, 2020.  Bradshaw now claims he was unable to open the PDF file which contained the quote letter, however when asked by Shanandore whether to he wanted to move forward with the $450,000 coverage, Bradshaw responded "yes." At no time did Bradshaw indicate he was unable to open the quote letter.  Additionally, On April 22, 2020, prior to the storm damage, Twin City issued a bill to Hunton which reflected the Endorsement, the account balance decreased by $532.00, leaving an account balance of $178.89.  There is no evidence that Bradshaw contacted Shanandore or Twin City to dispute the endorsement or bill.

Plaintiff also argues that there was no modification to the policy because there was no consideration.    Consideration is any benefit conferred or agreed to be conferred upon a promisor to which he is not lawfully entitled . . . . *Capel v. Allstate Ins. Co.,* 78 Ark. App. 27, 39, 77 S.W.3d 533, 541 (2002).  The quote letter indicated the consideration for the policy change: Hunton agreed to reduce the amount of coverage on the building and Twin City agreed to reduce the premiums due and to refund a portion of the premium remaining on the policy coverage that was reduced.  The benefit of the reduction in premium was agreed "to be conferred" and was in fact conferred.  The fact that it did not occur simultaneously with endorsement effective date does not defeat the validity of the contract modification.

For these reasons, the Defendant's motion for summary judgment (ECF No. 11) is

GRANTED. The Clerk is directed to close the case.

       IT IS SO ORDERED 31st day of March, 2023.


_____
James M. Moody Jr.
United States District Judge